FILED

2013 OCT -8 PM 4: 34

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

February 2013 Grand Jury

| UNITED STATES OF AMERICA, | CR No. 13-0733 |
|---|---|
| Plaintiff, | **I N D I C T M E N T** |
| v. | [18 U.S.C. § 1348: Securities Fraud; 18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 2: Aiding and Abetting and Causing an Act to be Done] |
| TOBY G. SCAMMELL, | |
| Defendant. | |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. §§ 1348, 2]

A. INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

1. Marvel Entertainment, Inc. ("Marvel"), was a character-based entertainment company with its headquarters located in New York, New York. The common stock of Marvel was registered with the Securities and Exchange Commission ("SEC") under Section 12(b) of the Securities Exchange Act of 1934 ("'34 Act"), 15 U.S.C. § 78l. The common stock of Marvel was listed on the New York Stock Exchange under the ticker symbol "MVL."

1  2.   The Walt Disney Company ("Disney") was a diversified entertainment company with its headquarters located in Burbank, California, within the Central District of California. The common stock of Disney was registered with the SEC under Section 12(b) of the '34 Act. The common stock of Disney was listed on the New York Stock Exchange under the ticker symbol "DIS." On Monday, August 31, 2009, prior to the 9:30 a.m. (EST) opening of stock markets in the United States, Disney and Marvel publicly announced an agreement for Disney to acquire Marvel for cash and Disney stock equal to $50 per Marvel share.

3.   Defendant TOBY G. SCAMMELL ("SCAMMELL") resided in Los Angeles, California, within the Central District of California. Defendant SCAMMELL was employed as an associate consultant at an international management consulting company with offices located in Los Angeles, California ("Consulting Co."), within the Central District of California. On or about August 2, 2009, defendant SCAMMELL moved to San Francisco, California. On or about August 3, 2009, defendant SCAMMELL began a new job as an associate with a private investment management company in Menlo Park, California.

4.   J.E.R. resided in Los Angeles, California, within the Central District of California. J.E.R. was an associate consultant at Consulting Co. in Los Angeles, California, and was romantically involved with defendant SCAMMELL in 2008 and 2009. In or about June 2009, J.E.R. took a leave of absence from Consulting Co. to begin a six-month externship at Disney in Disney's corporate strategy department. During her externship with Disney, J.E.R. owed a duty of trust and confidence to

2

Disney, which included an obligation to maintain as confidential material non-public information that J.E.R. learned through her externship. Defendant SCAMMELL resided with J.E.R. in Los Angeles, California, from on or about July 15, 2009, to on or about August 1, 2009. Defendant SCAMMELL used the Blackberry cellular telephone of J.E.R. on occasion and had the password to unlock the device.

   5.   O.S. was the brother of defendant SCAMMELL.

   6.   A call option is an agreement that gives the investor the right, but not the obligation, to buy a stock, bond, commodity, or other instrument at a specified price, known as the "strike price," within a specific time period. One Marvel call option contract conferred the investor the right to purchase 100 shares of Marvel common stock at the specified strike price.

   7.   Options related to Marvel common stock were listed and traded on the International Securities Exchange based in New York, New York, the NASDAQ OMX PHLX Exchange based in Philadelphia, Pennsylvania, and the Chicago Board Options Exchange based in Chicago, Illinois, among others.

B.   SCHEME TO DEFRAUD

   8.   Beginning in or about June 2009, and continuing until in or about October 2009, in Los Angeles County, within the Central District of California, and elsewhere, defendant SCAMMELL, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud a person in connection with his purchases, and attempted purchases, of options to purchase Marvel common stock ("Marvel call options"),

3

as to material matters, and to obtain money and property in connection with his purchases, and attempted purchases, of Marvel call options by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts. Specifically, defendant SCAMMELL knowingly obtained, possessed, and misappropriated material non-public information that was the property of Disney and held in trust and confidence by J.E.R., which information related to Disney's planned acquisition of Marvel, and used the material non-public information for his own personal benefit and profit to purchase Marvel call options prior to the August 31, 2009, public announcement of the acquisition, all in breach of his relationship and duty of trust and confidence with J.E.R. The announcement of Disney's acquisition of Marvel resulted in a one day stock price increase of over 25% from $38.65 at the close of the market on Friday, August 28, 2009, to $48.37 at the close of the market on August 31, 2009.

9. The scheme to defraud operated, in substance, as follows:

   a. Defendant SCAMMELL obtained, possessed, misappropriated, and misused the following material non-public information from J.E.R. related to Disney:

      (1) that Disney planned an acquisition "that people would recognize right away" and that the transaction would close within three months;

      (2) that Disney planned to acquire Marvel and was expending resources, including the time of J.E.R. and others in

the corporate strategy department at Disney, toward the planned acquisition of Marvel;

        (3) that individuals in the Disney corporate strategy department, including J.E.R., expected the acquisition of Marvel to reach agreement and announcement no later than the Labor Day weekend of September 5 to 7, 2009; and

        (4) that Disney would pay the equivalent of approximately $50 per Marvel share to acquire Marvel.

    b.  After defendant SCAMMELL moved to San Francisco, California, on or about August 2, 2009, defendant SCAMMELL and J.E.R. continued to communicate almost daily via telephone, email, and in-person visits in Los Angeles, California, during which defendant SCAMMELL obtained additional information about J.E.R.'s work in the corporate strategy department of Disney, and on the acquisition of Marvel.

    c.  While in possession of the material non-public information described above, defendant SCAMMELL misappropriated and misused the material non-public information to conduct research on the Internet to obtain additional information in furtherance of the scheme to defraud, including Internet searches related to the following subject matters, among others:

        (1)  Marvel and its stock and options prices;

        (2)  Disney and its stock price;

        (3)  Marvel and Disney executives;

        (4)  options and options trading strategies;

        (5)  insider trading;

        (6)  material non-public information;

        (7)  Mark Cuban and insider trading allegations

1  against Mark Cuban by the Securities and Exchange Commission;
2  and
3              (8)   the case <u>United States v. O'Hagan</u>, a Supreme
4  Court decision concerning the misappropriation theory of insider
5  trading in the context of a tender offer.
6         d.   Defendant SCAMMELL possessed, misappropriated,
7  and misused the above-described material non-public information
8  for his own personal benefit to place 29 orders to purchase
9  Marvel call options in his own individual retirement account
10 number x2931 at TD Ameritrade, Inc. ("Ameritrade"), and in the
11 Ameritrade account number x4989 of his brother, O.S.  All but 2
12 of the 29 orders to purchase Marvel call options had strike
13 prices of $40 and $45 per Marvel share.  The two remaining
14 orders had strike prices of $50.  Further, 23 of the 29 orders
15 had expiration dates of September 19, 2009, that is, within
16 three to five weeks of the date the orders were placed.  In
17 total, defendant SCAMMELL purchased 647 Marvel call options with
18 strike prices of $45 and $50 per share, and 12 Marvel call
19 options with a strike price of $40 per share.  The 659 Marvel
20 call options purchased by defendant SCAMMELL cost a total of
21 $5,465.  Prior to August 2009, defendant SCAMMELL had never
22 invested in the stock of Marvel or Disney; had purchased options
23 contracts only one time in April 2008, and lost most of the
24 investment; and had not purchased any securities in several
25 months.
26         e.   From on or about August 1, 2009, to on or about
27 August 28, 2009, the market closing price of Marvel's common
28

stock ranged from an all-time high of $40.41 per share on August 3, 2009, to a low of $37.66 per share on August 19, 2009.

   f. While defendant SCAMMELL concealed his purchases of Marvel call options from J.E.R. and Disney, from his brother O.S., and from his employer, defendant SCAMMELL used the material non-public information related to Disney's planned acquisition of Marvel to gain market advantage over the counter parties from whom defendant SCAMMELL purchased the Marvel call options.

   g. After the public announcement of Disney's acquisition of Marvel, on or about August 31, 2009, defendant SCAMMELL placed orders to sell all of the Marvel call options in his Ameritrade account, and in the account of his brother, O.S., and thereby realized a profit of approximately $192,497, a return of over 3,000 percent on the $5,465 investment.

   h. Defendant SCAMMELL concealed proceeds from the sale of Marvel call options from his brother, O.S., by opening a second account at Ameritrade, number x8443 in the name of O.S., which was not linked to a financial management tool that provided O.S. with email summaries of his financial account balances and transactions.  Defendant SCAMMELL then transferred $100,000 of proceeds from the sale of Marvel call options in Ameritrade account number x4989 of O.S. to the new Ameritrade account number x8443.  Defendant SCAMMELL thereafter diverted approximately $80,000 of proceeds from the sale of Marvel call options in the accounts of O.S. to defendant SCAMMELL.

10. The scheme to defraud further operated, in substance, as follows:

    a. On or about June 30, 2009, J.E.R. attended a meeting at Disney in which she learned that Disney planned to acquire Marvel. That same day, defendant SCAMMELL, who was on vacation in Africa at the time, received an email from J.E.R. in which J.E.R. told defendant SCAMMELL about an opportunity she had to work on the Marvel acquisition project at Disney, without mentioning Marvel by name. Later that same day, defendant SCAMMELL received another email from J.E.R. in which defendant SCAMMELL learned that J.E.R. had not been selected to work on the acquisition project because, in part, "the deal is too big for my first gig." Defendant SCAMMELL also had telephone conversations with J.E.R. regarding the subject matter of the June 30, 2009, emails.

    b. On or about July 9, 2009, defendant SCAMMELL returned to Los Angeles, California, from his vacation in Africa and soon thereafter moved into the apartment of J.E.R.

    c. On or about July 13, 2009, defendant SCAMMELL performed three Internet searches on Yahoo! Finance related to Marvel stock.

    d. On or about July 22, 2009, defendant SCAMMELL performed one Internet search for "MVL" and reviewed Marvel's stock price on Google Finance.

    e. On or about July 23, 2009, defendant SCAMMELL performed Internet searches for "Disney investor relations," "Marvel Disney," and "Marvel Disney acquisition."

   f. On or about July 24, 2009, defendant SCAMMELL received a text message from J.E.R. in which defendant SCAMMELL learned that J.E.R. had been assigned by her Disney supervisors to work on "the big project." The tasks assigned to J.E.R. included analysis of Marvel's superhero characters and compensation analysis of Marvel executives, including Marvel Chief Executive Officer "I.P."

   g. On or about July 28, 2009, defendant SCAMMELL transferred $2,000 from the Wells Fargo Bank account number x5169 of O.S. to the Ameritrade account number x4989 of O.S. in preparation to purchase Marvel call options.

   h. On or about August 3, 2009, Disney's Chief Financial Officer ("CFO"), T.S., communicated to Marvel's management an acquisition price of $50 per Marvel share. On or about August 4, 2009, Marvel's management informed Disney CFO T.S. that a deal at $50 per Marvel share was possible and the two companies continued working to effect the transaction.

   i. On or about the morning of August 4, 2009, Marvel issued a press release and disclosed its earnings for the period ending June 30, 2009, in which the company reported net income and revenue down approximately 38 percent and 26 percent, respectively, from the same period in 2008. Marvel also modified the lower-end of its forecasted revenue and earnings ranges for the year 2009 from $450 million to $465 million in revenue and from $95 million to $105 million in income. That same day, Marvel's stock price closed at $40.05 per share, down from $40.41 or -.89 percent from the prior day, and continued to trend down to $37.75 per share by August 19, 2009.

j. On or about August 4, 2009, J.E.R. and her colleagues in the corporate strategy department at Disney attended a dinner at BOA Steakhouse in West Hollywood, California, hosted by Disney CFO T.S. That evening, at approximately 10:33 p.m., defendant SCAMMELL had a telephone conversation with J.E.R. that lasted approximately 16 minutes and 12 seconds.

k. On or about the evening of August 4, 2009, while on the telephone with J.E.R., defendant SCAMMELL performed two Internet searches for "DIS" and the name of Disney's CFO T.S., respectively, and reviewed Disney's stock price.

l. On or about August 4, 2009, the team of Disney employees working on the acquisition of Marvel, including J.E.R., expected the acquisition to close by the end of August 2009. Soon thereafter, defendant SCAMMELL and J.E.R. discussed making reservations to travel together to Michigan during the week of September 7, 2009.

m. On or about August 8, 2009, defendant SCAMMELL performed Internet searches for "MVL," "option calculator," "option profit calculator," and "option strategies," and reviewed Marvel's stock price.

n. On or about August 11, 2009, Disney delivered a draft merger agreement to Marvel.

o. On or about August 11, 2009, defendant SCAMMELL performed Internet searches for "Marvel ownership," the name of Marvel's CEO, "I.P.," options trading strategies, and "401k limits," and reviewed Marvel's stock price.

p.  On or about August 11, 2009, at approximately 6:17 p.m., J.E.R. received an email with "updated materials" related to her work on the Disney acquisition of Marvel.

q.  On or about August 11, 2009, between approximately 7:21 p.m. and 10:30 p.m., defendant SCAMMELL had five telephone conversations with J.E.R. that lasted a total of approximately 1 hour and thirty minutes. One of the telephone calls began at approximately 7:40 p.m., and lasted approximately 24 minutes and 51 seconds.

r.  On or about August 12, 2009, defendant SCAMMELL performed the following Internet searches: (i) "marvel and ownership"; (ii) "Marvel"; (iii) "call options"; (iv) "how call options work"; and (v) "marvel entertainment."

s.  On or about August 13, 2009, defendant SCAMMELL reviewed on Yahoo! Finance Marvel's then current stock price, a five year chart of Marvel's stock price, and the prices of certain Marvel options.

t.  On or about August 13, 2009, defendant SCAMMELL transferred $800 from the Wells Fargo checking account number x5169 of his brother O.S. to the Ameritrade account number x4989 of O.S. to cover part of defendant's SCAMMELL's purchase of 125 Marvel call options with an expiration date of September 19, 2009, and a strike price of $50 per Marvel share.

u.  On or about August 16, 2009, defendant performed the following Internet searches: (i) "insider trading"; (ii) "tender offer"; (iii) "mark cuban"; (iv) "material, non-public information"; (v) "SEC Rule 10b-5; (vi) "Williams Act"; (vii) "United States v. O'Hagan"; (viii) "call options"; and (ix) "how

11

options work," some of which searches were performed more than once that day.

    v. On or about August 17, 2009, defendant SCAMMELL placed an order to transfer $1,500 from his Wells Fargo account number x9505 to his Ameritrade account number x2931 to pay for his purchase of 65 Marvel call options with an expiration date of September 19, 2009, and a strike price of $45 per Marvel share.

    w. On or about August 21, 2009, defendant SCAMMELL and J.E.R. exchanged email messages about making airline reservations to fly to Detroit, Michigan, during the week of September 7, 2009, to attend a wedding.

    x. From on or about August 21, 2009 to on or about August 23, 2009, defendant SCAMMELL stayed at the residence of J.E.R. in Los Angeles, California.

    y. On or about August 23, 2009 and August 24, 2009, J.E.R. and defendant SCAMMELL made airline reservations to travel to Detroit, Michigan, on or about September 9, 2009, to attend a wedding and related events the weekend of September 11 to 13, 2009.

    z. On or about August 25, 2009, defendant SCAMMELL and J.E.R had telephone conversations at 8:33 a.m. (1:19 minutes), 11:12 a.m. (1:55 minutes), 5:47 p.m. (9 minutes), and 10:23 p.m. (21 minutes).

    aa. On or about August 25, 2009, defendant SCAMMELL performed the following Internet searches: (i) the name of Marvel's CEO "I.P."; (ii) "who owns that plane"; (iii) "I.P. plane"; (iv) "Marvel corporation air transport"; (v) "marvel

entertainment netjets"; and (vi) "company jets sec disclosure," during the period from approximately 6:16 p.m. to approximately 6:26 p.m.

bb. On or about August 26, 2009, defendant SCAMMELL placed an order to transfer $1,200 from his Wells Fargo account number x9505 to his Ameritrade account number x2931 to pay for purchases of Marvel call options.

cc. On or about August 28, 2009, defendant SCAMMELL transferred $1,000 from his Wells Fargo account number x9505 to the Wells Fargo account number x8211 of his brother, O.S., to pay for purchases of Marvel call options in the account of O.S.

dd. On or about August 28, 2009, the last trading day before the planned announcement of Disney's acquisition of Marvel, defendant SCAMMELL placed 15 orders to purchase Marvel call options during the period from approximately 12:30 p.m. to 3:59 p.m. (EST), less than one minute before the close of the United States stock markets at 4 p.m. (EST).

ee. On or about August 28, 2009, defendant SCAMMELL performed Internet searches for "marvel."

ff. On or about August 31, 2009, at approximately 6:30 a.m., defendant SCAMMELL searched for "MVL" on Yahoo! Finance.

gg. On or about August 31, 2009, at approximately 6:33 a.m., defendant SCAMMELL performed an Internet search for "DIS."

hh. On or about August 31, 2009, defendant SCAMMELL transferred $1,000 from his Wells Fargo account number x9505 to

the Wells Fargo account number x8211 of his brother, O.S., to pay for purchases of Marvel call options in the account of O.S.

    ii. On or about September 1, 2009, defendant SCAMMELL opened a new account at Ameritrade ending in number x8443 in the name of his brother, O.S.

    jj. On or about September 4, 2009, defendant SCAMMELL transferred $100,000 in proceeds from the sale of Marvel call options from the Ameritrade account number x4989 in the name of his brother, O.S., to the new Ameritrade account number x8443 of O.S., in order to conceal these proceeds and his trading activity from O.S.

    kk. On or about September 12, 2009, defendant SCAMMELL received an email from his brother, O.S., who had received notice of a large increase in the balance of his Ameritrade account number x4989 and told defendant SCAMMELL "I'm not sure what happened." In response, defendant SCAMMELL concealed his trading of Marvel call options in the Ameritrade account of O.S. and said the amount looked "about right."

COUNT TWO

[18 U.S.C. § 1343]

11. The Grand Jury repeats, realleges, and incorporates paragraphs 1 through 10 of this Indictment as though fully set forth herein in their entirety.

12. Beginning in or about June 2009, and continuing to in or about October 2009, in Los Angeles County, within the Central District of California, and elsewhere, defendant SCAMMELL, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud Disney and the victim counter parties to defendant SCAMMELL in his purchases, and attempted purchases, of call options to purchase shares of Marvel common stock as to material matters, and to obtain money and property from such victims by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

13. The fraudulent scheme operated, in substance, in the manner described in paragraphs 8 through 10 of this Indictment.

//
//
//
//
//
//
//
//
//
//

14. On or about July 29, 2009, within the Central District of California, and elsewhere, defendant SCAMMELL, for the purpose of executing the above-described scheme to defraud, transmitted, caused the transmission of, and aided and abetted the transmission of, the following item by means of wire and radio communication in interstate and foreign commerce: a wire transfer of $2,000 from the Wells Fargo account number x5169 of O.S. in San Francisco, California, to the Ameritrade account number x4989 of O.S., which was effected through First National Bank of Omaha, Nebraska.

A TRUE BILL

/S/
Foreperson

ANDRÉ BIROTTE JR.
United States Attorney

*[signature]*

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

RICHARD E. ROBINSON
Assistant United States Attorney
Chief, Major Frauds Section

STEPHEN A. CAZARES
Assistant United States Attorney
Deputy Chief, Major Frauds Section